## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMMAR IDLIBI, | : | Civil Action No._____ |
| PLAINTIFF, | : | **JURY TRIAL DEMANDED** |
| v. | : | MARCH 21, 2023 |
| CONNECTICUT DEPARTMENT | : | |
| OF PUBLIC HEALTH, | : | |
| CONNECTICUT STATE | : | |
| DENTAL COMMISSION, | : | |
| DAVID TILLES, | : | |
| OLINDA MORALES, | | |
| STEVEN G. REISS, | : | |
| DEBORAH M. DODENHOF, | | |
| ANATOLIY RAVIN, | : | |
| (IN THEIR OFFCIAL | | |
| AND PERSONAL CAPACITIES) | : | |
| DEFENDANTS. | : | |

MAR 21 2023 AM 10:54
FILED-USDC-CT-HARTFORD

## COMPLAINT

### JURISDICTIONAL BASIS

I. Plaintiff claims federal jurisdiction pursuant to title VI of the Civil Rights Act of 1964, as well Title V, Title VII and Article III § 2, all extend the jurisdiction to cases arising under the U.S. Constitution.

II. Plaintiff brings this suit pursuant to 42 U.S.C. §2000d *et seq.*, as well as Title 42 U.S. Code § 1983 and 42 U.S. Code § 1981 for discrimination on the basis of race, ethnic/national origin and religious creed, and for violation of the Due Process clause of the Fifth Amendment and the Fourteenth Amendment, as well as a violation of the Equal Protection clause of the Fourteenth Amendment by the Defendants under color of law, all of which are claims arising under federal law. Plaintiff additionally brings a retaliation claim on the underlying claim of

1

discrimination. Accordingly, the Court has jurisdiction in this case pursuant to 28 U.S.C. § 1331.

Plaintiff received a Release of Jurisdiction letter as to the Defendants state agencies dated December 29, 2022, attached hereto as Exhibit A.

Plaintiff claims waiver of immunities as follows:

## A- SOVRGEIN IMMUNITY

Plaintiff claims waiver of Sovereign Immunity. The Plaintiff filed an administrative complaint against the Defendant with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on or about July 18, 2022. Plaintiff received a Release of Jurisdiction letter as to the Defendant agencies dated December 29, 2022. This complaint is brought within ninety (90) days after the Release of Jurisdiction letter, which is attached hereto as Exhibit A. The Release of Jurisdiction waives the State's Sovereign Immunity pursuant to Conn. Gen. Sat. § 46a-100. Apart from Plaintiff's membership in a vulnerable class, the equal protection guarantee also extends to individuals who are subjected to invidious discrimination at the hands of government officials even without being associated with specific class membership.

Furthermore, Plaintiff claims constitutional violations as well as local and federal laws violations by an arm of the State of Connecticut which receives and accepts Federal financial assistance. Therefore, Sovereign Immunity is abrogated under the Eleventh Amendment.

Furthermore, Sovereign Immunity does not apply to claims of injunctive and/or declaratory relief as requested in this action. Because this action is brought under a hybrid waiver doctrine (release of jurisdiction and receipt of federal funds) Plaintiff's private cause of action need not be exclusively based on the underlying claims with CHRO.

## B- QUALIFIED IMMUNITY

Because Plaintiff alleges constitutional violations as well as willful and wanton conduct, Defendants are not entitled to 'Qualified Immunity.'

2

## C- ABSOLUTE IMMUNITY

Because Plaintiff alleges facts sufficient to support claims of 'Abuse of Process', 'Intentional Tort of Malicious Prosecution' and 'Conspiracy' in the form of unlawful *ex parte* communication, the Defendants are not entitled to 'Absolute Immunity.'

## D- QUASI-JUDICIAL IMMUNITY

Defendants are not entitled to quasi-judicial immunity because Plaintiff alleges sufficient facts to establish that the actions in question were not taken in the Defendant's judicial or quasi-judicial capacity and the Defendants have acted in the complete absence of all jurisdiction.

## E- COLLATERAL ESTOPPEL AND RE JUDICATA

Plaintiff's claims are not barred by the doctrines of 'Collateral Estoppel' nor by 'Res Judicata' because Plaintiff claims personal injury that was never litigated before. Plaintiff claims are not identical to issues claimed in any prior action and no final judgment by any judicial authority has been rendered on the merits of this action with regards to any of the counts alleged herein.

## F- STATUTES OF LIMITATION

Plaintiff claims that the statutes of limitations are tolled by the continuing course of conduct doctrine and by the doctrine of equitable tolling. Furthermore, the Plaintiff factually alleges that the Defendants acted fraudulently. Therefore, the applicable statutes of limitations are also tolled by the doctrine of fraudulent concealment pursuant to Connecticut General Statutes § 52-595.

### PARTIES

III. Plaintiff, Ammar Idlibi, is a natural person residing at 33 Maggie Court. Terryville, CT 06786.

IV. Defendants are: Connecticut Department of Public Health ("Defendant Department"), Connecticut State Dental Commission ("Defendant Commission"), David Tilles, 40 S. Main Str. Apt. 2, Middletown, CT 06457-3631, Olinda Morales, 46 Bentwood Rd., West Hartford, CT 06107-3701, Steven G. Reiss, 109 Federal Road. Brookfield, CT 06804, Deborah M. Dodenhof, 87 Mccormick Lane.

3

Middletown, CT 06457-2046, and Anatoliy Ravin, 39 Olean Str. Apt. 2, Worcester, MA 01602-4163, acting in their official and in their personal capacities.

The Department of Public Health and the Connecticut State Dental Commission is/are a Connecticut State agency located at 410 Capitol Avenue, MS 13PHO. PO Box 340308. Hartford, CT  06134-0308. Its liaison officer is Mr. Jeffrey A. Kardys, who is tilted the 'Administrative Hearings Specialist.'

### NATURE OF THE CASE AND GENERAL ALLEGATIONS

1- Plaintiff, Ammar Idlibi is a Connecticut licensed Board Certified pediatric dentist and an active Member of the American Academy of Pediatric dentistry since 1990.

2- Plaintiff had been practicing hospital pediatric dentistry, providing professional specialized dental care for children under general anesthesia at Connecticut Children's Medical Center, where he maintained his privileges to operate since 2003.

3- Plaintiff pays annual dues to the Department of Public Health to maintain his license to practice dentistry in Connecticut.

4- The Department of Public Health accepts and receives federal funding. Specifically, on December 10, 2022, The Department of Public Health received the amount of $32 Million Dollars over a period of five years. Through such awarded funds, the "Department facilitates public access to needed healthcare services." According to a press release by Governor Ned Lamont.

5- On 12/21/2022, the state of Connecticut received approval of an application for Federal Funding "to support the state's actions to improve health equity and reduce health disparities by improving the affordability and accessibility of health care coverage," According to a press release by Governor Ned Lamont.

6- As a licensed healthcare provider in the State of Connecticut, Plaintiff is licensed to deliver pediatric dental care to the children of Connecticut. Plaintiff earns all his income through providing specialized dental care to Connecticut residents.

7- There is a statewide shortage in pediatric dentists who provide needed urgent and emergent dental treatment to children under general anesthesia, especially for children benefitting from the federally funded Medicaid program (Husky); Plaintiff is one of a scarce pool of such specialists in Connecticut.

8- Only licensed Board Certified pediatric dental specialists with mostly unblemished record may obtain hospital privileges to operate in Connecticut hospitals. The public heavily relies on such specialists to facilitate children's access to the specialized care.

9- Most hospitals in Connecticut (and nationwide) deny operating privileges to specialists with a disciplined license, specifically licenses that are on probation or have been reprimanded.

10- A mother of a child treated by Plaintiff filed a complaint with the Connecticut Department of Public Health alleging that Plaintiff provided unnecessary dental treatment for her child in the form of eight crowns.

11- The Department consulted with a dentist by the name of Jenny Federman ("Dr. Federman.") Dr. Federman is not Plaintiff's peer. Dr. Federman is neither a Board Certified specialist nor a hospital practitioner (as the Plaintiff is.)

12- The Department through its counsel Attorney David Tilles ("Tilles"), met with Plaintiff and his attorney Mr. Tilles intentionally misrepresented to Plaintiff that the only two issues in question are the justification for using general anesthesia and the justification for using the crowns. During said meeting Plaintiff explained to Mr. Tilles why both general anesthesia and crowns are justified in this case and that Dr. Federman is not qualified to render an expert opinion regearing treatment provided by Plaintiff.

13- After meeting with Plaintiff, Mr. Tilles realized that the Department's expert is not Plaintiff peer, is not Board Certified in Plaintiff specialty and does not treat children under general anesthesia.

14- After meeting with Plaintiff, Mr. Tilles realized that the Department is not likely to prevail on prosecuting charges of unjustified general anesthesia and unjustified placement of crowns against Plaintiff. Therefore, Mr. Tilles

5

maliciously used his legal expertise and training to prepare a statement of charges that includes other additional charges that are easily substantiated but very difficult to be reversed in an administrative appeal. The additional charges were 'lack of informed consent' and 'inadequate charting'; both are subject to credibility assessment and the broad discretion of the Dental Commission.

15- On September 7, 2017, the Defendant Department presented the Defendant Commission with a Statement of Charges ("charges") against the dental license held by Plaintiff. The Charges allege that Plaintiff's license is subject to disciplinary action pursuant to Conn. Gen Stat. § 20-114(a). The charges alleged that treatment under general anesthesia was unjustified, that the use of the crowns was unjustified, that informed consent for placing the crowns was not obtained, and that Plaintiff failed to chart caries and decalcifications in the patient's record.

16- On January 11, 2018 and January 16, 2018, a hearing was held by a panel of Commissioners composed of two general dentists and one Registered Nurse ("Defendants panelists.") The two general dentists are Defendants Steven Reiss and Anatoly Ravin. The nurse is Defendant Barbra Dodenhoff ("Defendants panelists" collectively.) All three Defendant panelists are current or former healthcare practitioners who are familiar with the contractual business relationships between health insurance companies and healthcare practitioners.

17- Plaintiff called Dr. Donald Kohn to testify as an expert on the prevailing standard of care in pediatric dentistry. The Defendant Department called Dr. Jenny Federman to testify.

18- Dr. Kohn testified that the treatment that was performed by Plaintiff "is consistent with the standard of care in pediatric dentistry and what is taught in pediatric dentistry, especially in a hospital setting."

19- Dr. Federman testified during the hearing, that the American Academy of Pediatric Dentistry is teaching exactly what the Plaintiff is doing.

20- The mother of the patient testified that she consented to the use of the crowns, but she falsely testified that she requested Plaintiff to leave the operating room

6

to update her with the findings of the x-rays taken while her child is under general anesthesia. The mother also accused Plaintiff's associate, Dr. Guzzardi, of falsifying four entries in her child's dental record.

21- Dr. Guzzardi testified that the mother did consent to the use of multiple crowns as needed.

22- On September 5, 2018 the Defendant Commission issued a Memorandum of Decision ("MOD") subjecting the Plaintiff's dental license to disciplinary actions which included a 'reprimand', a $10,000.00 civil penalty and 3 years of probation to monitor Plaintiff's practice for "skill and safety."

23- The Defendant Commission found that Plaintiff's use of crowns was unjustified and that Plaintiff fell below the standard of care in placing the crowns.

24- The Commission dismissed the charge of unjustified use of general anesthesia.

25- The Defendant Commission found that the mother who accused Dr. Guzzardi of falsifying four entries in her child dental records should be credited for accusing Plaintiff of not entertaining her request to leave the operating room and update her with his findings.

26- The Defendant Commission found that Plaintiff was not credible in asserting that the mother never made the request in the preceding paragraph.

27- The Defendants panelists rigorously influenced the Board members to vote in favor of their findings, conclusions of law and orders. Accordingly, the panelists' MOD was passed by a 7-2 vote. Two commissioners dissented.

28- Board member, Peter Katz, DDS, opposed the MOD in its entirety and requested the case against Plaintiff be completely dismissed. Dr. Katz stated that he based his dissenting opinion on a thorough review of the evidence, and upon downloading the digital x-rays on his computer for a better and more accurate reading. Dr. Katz further opined that the mother who accused Dr. Guzzardi of falsifying her child's dental records should not be credited for accusing Plaintiff of not entertaining her alleged request.

29- The Defendant Commission's MOD adjudicated all but one of the Department's charges. The Commission's MOD states: "This decision is based entirely on the

record and the specialized professional knowledge of the Commission in evaluating the evidence. The Commission relied on the training and experience of its members in making its findings of fact and conclusions of law."

30- The Defendant Commission found that Plaintiff practiced below the standard of care in placing the crowns, in obtaining informed consent and in charting.

31- The Defendant Commission states in its MOD that Plaintiff should still have come out of the operating room for ten to fifteen minutes and explain his updated findings to the patient's mother.

32- On September 10, 2018, pursuant to Connecticut General Statutes § 4-183, the Plaintiff engaged in a protected activity to secure his constitutional rights and commenced his administrative appeal from the decision of the Defendant Commission in Connecticut Superior Court.

33- On 3/20/2019, Plaintiff filed his Motion to stay the Commission's orders.

34- On March 21, 2019, while waiting for Superior Court to rule on his motion for stay, the Defendants retaliated against Plaintiff without probable cause, for engaging in his protected activity and suspended Plaintiff's license to practice dentistry because the Defendants considered "the citizens of Connecticut in clear and immediate danger" from Plaintiff. The suspension resulted in canceling multiple scheduled urgent dental operations for several children who were in urgent need of care. The suspension resulted in risking the health, safety and wellbeing of several (children) citizens of the State of Connecticut who were denied access to urgent care and were deprived from benefiting from a federally funded program (Husky.) The suspension restricted Plaintiff's ability to benefit from the federally funded program in providing care for the children of the citizens of Connecticut.

35- On February 26, 2019, and without probable cause, the Defendants once again, retaliated against Plaintiff for engaging in his protected activity by issuing another disciplinary action against Plaintiff for his delayed compliance with the Defendant Commission's orders although Plaintiff was in full compliance at the time of the hearing. The Defendant's discriminatorily and retaliatory extended

8

probation on Plaintiff's license to monitor him for "skillfulness and safety" in the absence of a finding of unskillfulness and/or lack of safe practices on the part of the Plaintiff.

36- On September 5, 2019, Plaintiff engaged in a protected activity to secure his constitutional rights and administratively appealed from the Defendants' actions in the two preceding Paragraphs. That appeal was stayed by Superior Court and is currently pending.

37- On 11/7/2019, the Superior Court ordered both parties to file supplemental briefs.

38- On 1/3/2020, the Commission filed its supplemental brief with the superior court. In its supplemental brief, the Commission concluded (on page 9): "In this case, the clinical examination and findings did not justify the placing of eight stainless steel crowns on a three year old child. Doing so violated the standard of care. The Commission's decision is supported by overwhelming evidence. It should be affirmed."

39- On 1/7/2020, the trial court issued its first remand to the Defendant Commission in its first Memorandum of Decision rejecting the Defendant Commission's finding in the preceding paragraph and directing the Defendant Commission to revise its finding.

40- In furtherance of their unconstitutional practice, the Defendant panelists attempted to influence the remaining Board members by passing a proposed amendment to their original MOD on April 8, 2020, adding that the use of the crowns was not justified even according to the guidelines of the American Academy of Pediatric Dentistry ("AAPD.")

41- A newly appointed member of the Board, Dr. Monica Cipes ("Dr. Cipes"), replaced a recently retired Board member. Dr. Cipes happens to be a Board Certified pediatric dentist (as the Plaintiff is.) During oral discussion/voting session, Dr. Cipes convinced the majority of the remaining Board members that Plaintiff's use of the crowns was justified and within the standard of care of pediatric dentistry, against the intense objection of the Defendants panelists.

9

The issues of informed consent for treating children under general anesthesia, and the issue of charting were not discussed, as the court's remand order was limited to the issue of the treatment provided only. Accordingly, the Defendant Commission voted to reject an amendment of negligence/incompetence placing the crowns by the Plaintiff. Against the Defendant panelists' objection, The remaining majority Board members further reversed a finding of "falling below the standard of care" in the treatment that Plaintiff provided and in the Plaintiff's documentation for the justification of said treatment. Against the Defendants panelists' objections, the remaining majority Board members acknowledged that placing all the crowns was justified and the documentation for justification was adequate.

42- On 6/16/2020, the Commission filed its amended MOD with the superior court.

43- On 6/18/2020, Superior Court issued its second remand to the Defendant Commission requesting the parties to address an inconsistency in the amended MOD.

44- On 8/10/2020, Superior Court rejected the Defendant Commission's rationale on the inconsistency and directed the Defendant Commission to resolve its inconsistency.

45- Pursuant to the Court's second remand order in the preceding paragraph, the Defendant Commission filed its final revised MOD on 9/28/2020 resolving the above inconsistency stating that Plaintiff the Defendant Department "did not sustain its burden of proof" with respect to placing one or more crowns without adequate justification, or without adequately documented justification.

46- On September 28, 2020, the maliciously prosecuted charge of placing "one or more crowns without adequate justification, or without adequately documented justification" had terminated in Plaintiff's favor.

47- As soon as the Defendants publicized the probation against Plaintiff, all private insurance companies terminated their contracts with Plaintiff, except for Delta Dental and Husky; both conducted thorough independent investigations to assess the validity of the Defendants' probation and reprimand.

10

48- Several media outlets including the Hartford Courant and other TV channels, totaling over twenty media outlets in Connecticut and nationwide published stories describing Plaintiff as an unethical healthcare provider who abuses children by providing unnecessary treatment for them.

49- Plaintiff's professional reputation was destroyed and subsequently Plaintiff lost the majority of his patients pool which Plaintiff established over 15 years of high quality care to the citizens of Connecticut.

50- The September 28, 2020 MOD which was recklessly issued by the Defendant Commission in furtherance of its unconstitutional practice, maintains disciplinary actions against Plaintiff, which included a three-year probation to monitor Plaintiff for "skill and safety" despite the absence of unskillfulness and unsafe practice by Plaintiff and despite the reversal compelled by Superior Court. Said order maintains a $10,000 penalty on Plaintiff. Said order significantly restricts Plaintiff from providing healthcare to the public and significantly restricts the public from accessing care provided by Plaintiff, specifically children covered by multiple private health insurances, in addition to children who are covered by the federally funded Medicaid (Husky) program.

51- Plaintiff filed a motion with Superior Court to depose the Defendant panelists and other Board members, but Superior Court denied Plaintiff's request for deposition.

52- On 10/13/2020, Superior Court issued its final Memorandum of Decision dismissing Plaintiff's administrative appeal. Superior Court held that the Connecticut Department of Public Health and the Connecticut State Dental Association are the same entity under the statute.

53- On 10/16/2020, appealed Superior Courts decision to Connecticut Appellate Court. On 5/19/2022, the Appellate Court affirmed Superior Court's dismissal of Plaintiff's administrative appeal. The Appellate Court held that the it was proper for Defendant Commission to rely on its own expertise and professional knowledge in assessing evidence. The Appellate Court declined to review Plaintiff's constitutional claim because it was not "adequately briefed."

11

54- In furtherance of their unconstitutional practice, the Defendants continued to coerce Plaintiff to hire a dentist to monitor Plaintiff for skillfulness and safety until April 2, 2022.

55- In furtherance of their unconstitutional practice, the Defendants continued to coerce Plaintiff to pay the unjustified $10,000 fine. The most recent coercion took place on or around June 20, 2022, through a phone call from the Department's agent, 'Lavita Sookram.'

56- In furtherance of their unconstitutional practice and while the Plaintiff continued to fight for his rights in both Superior Court and the Appellate Court to reverse the Commission's unjustified orders, the Defendants continued to abuse the legal process by objecting to and opposing Plaintiff's filings in Superior Court and in Appellate Court. The most recent oppositional filing was made on June 14, 2022.

57- Because Plaintiff's second administrative appeal identified in paragraph 36 is still pending. Superior Court scheduled a mediation session, which has been continued to March 31, 2022.

58- On July 5, 2022, Saint Mary's Hospital in Waterbury, CT rejected Plaintiff application for operating privileges due to the extended probation imposed on Plaintiff's license. On the same date, Saint Mary's Hospital Credentialing Committee instructed Plaintiff to wait six more months after the end of Plaintiff's extended probation to reapply again for operating privileges at his own peril because the Hospital's bylaws restrict approval of applications from practitioners with disciplined licenses.

59- In furtherance of their unconstitutional practice and as of the date of this complaint, the Defendants continue to abuse the legal process through maintaining that Plaintiff posed clear and immediate danger to the public and that Plaintiff's license suspension in addition to the two reprimands and the extended probation must remain on Plaintiff's record and on the national databank.

60- On December 8, 2022, Plaintiff emailed counsel for the Defendant Commission that he intends to file a petition for a new administrative hearing pursuant to Conn. Gen Stat. § 4-181a(b) for the purpose of the reversal of the Commission's decision. If granted, the commission will be authorized to reverse its decision under Conn. Gen Stat. § 4-166(3).

61- In furtherance of its unconstitutional practice, on March 4, 2023, the Defendant Commission once again, continued to abuse the legal process by reasserting in its position statement to Superior Court that it rejects Plaintiff's request to remove disciplinary actions because it is "committed to upholding its duty to protect the public [from Plaintiff] and will vigorously [oppose Plaintiff's attempts to reverse or modify the Defendants' disciplinary actions and license suspension.]"

## COUNT I: Malicious Prosecution of Civil Charges.

1- **61.** The allegations of each of the foregoing paragraphs are incorporated into this Count as if specifically re-alleged herein. Plaintiff repeats and realleges the allegations contained in paragraphs 1–61 as if fully set forth herein.

62- The Defendant Department represented by Tilles initiated the prosecution of the charge of placing one or more crowns without adequate justification, or without adequately documented justification.

63- The charge identified in the preceding paragraph was prosecuted maliciously and without probable cause. The Defendant Department knew that Dr. Federman is not Plaintiff's peer, that she is not Board-Certified in Plaintiff's specialty as Plaintiff is, and that she does not treat children under general anesthesia as Plaintiff does. Despite this actual knowledge, the Defendant Department used Dr. Federman's opinion as a pretext to maliciously prosecute the charge against Plaintiff.

64- As a consequence of the malicious prosecution and the public adjudication of the charge by the Defendant Commission, Plaintiff suffered a deprivation of his liberty to earn a living and pursue a livelihood without undue interference from

13

the state. Plaintiff was deprived of this constitutional liberty as a direct result of publicizing Plaintiff as an unethical practitioner who provides unnecessary treatment to children.

65- The charge terminated in Plaintiff's favor on September 28, 2020 after Superior Court compelled the Defendants to reverse the adjudication of the charge.

66- The Defendants conduct resulted in restricting Plaintiff's ability to deliver healthcare to the public and to restrict the public accessibility to care provided by Plaintiff; both the delivery and accessibility of the care are federally funded activities.

67- As a direct and proximate result of the Defendants' actions and conduct, Plaintiff has suffered, and continues to suffer, an ascertainable injury and loss.

68- Plaintiff suffered the natural consequences resulting from the wrong, including injury to feelings because of the humiliation, disgrace, and indignity.

69- The Plaintiff also suffered special damages incurred in consequence of the wrong, including but not limited to legal expense, extensive time and effort related to self-representation, significant distraction from business, from duty towards business and the ability to earn revenue from business, in additions to expenses incurred to protect against further malicious acts from Defendants.

## COUNT II: Negligence

**1-69**- The allegations of each of the foregoing paragraphs are incorporated into this Count as if specifically re-alleged herein. Plaintiff repeats and realleges the allegations contained in paragraphs 1–69 as if fully set forth herein.

70- Because Plaintiff pays his annual dues to Defendants to maintain his dental license, Defendants legally owed Plaintiff the duty of licensing Plaintiff to practice dentistry without undue restrictions and without undue interferences.

71- Instead of abiding by their legal duty, Defendants breached that duty, unjustly disciplined and restricted Plaintiff's license until April 2, 2022. Moreover,

14

Defendants continue to persist on maintaining a license suspension on the national databank and continue to persist on holding that plaintiff posed clear and immediate danger to the public.

72- Defendants' tortious conduct is reckless, without care for the risk to Plaintiff and without reason or justification.

73- Defendants' tortious conduct is wanton and willful and in clear absence of all jurisdiction.

74- Defendants' conduct is unreasonable, without a care for the consequences and with reckless indifference to the rights of Plaintiff.

75- As a direct and proximate result of the Defendant's actions and conduct, the Plaintiff has suffered, and continues to suffer, an ascertainable injury and loss.

## COUNT III: Recklessness

**1-75.** The allegations of each of the foregoing paragraphs are incorporated into this Count as if specifically re-alleged herein. Plaintiff repeats and realleges the allegations contained in paragraphs 1–75 as if fully set forth herein.

76- Each Defendant acted with a state of mind approximating actual intent, and not merely a heightened form of negligence.

77- The conduct of the Defendants indicates a conscious disregard of the rights of the Plaintiff and was reckless, exhibiting highly unreasonable conduct involving an extreme departure from ordinary care in a situation in which a high degree of risk is apparent, in one or more of the following ways, in that the Defendants:

78- Recklessly used their specialized professional knowledge in clear absence of all jurisdiction, by including the unscientific and false statement that Glass ionomer filling is a 'recaldent', despite their knowledge of the falsity of that statement.

79- Recklessly abused their specialized professional knowledge in clear absence of all jurisdiction, by including the unscientific and false statement that MI paste is a 'recaldent', despite their knowledge of the falsity of that statement.

80- Recklessly abused their specialized professional knowledge in clear absence of all jurisdiction, by including the unscientific and false statement that glass

15

ionomer and MI paste are more appropriate than crowns to treat cavities in children under general anesthesia, despite their actual knowledge of the falsity of that statement.

81- Recklessly abused their specialized professional knowledge in clear absence of all jurisdiction, by including the unscientific and false statement that cervical decalcification can sometimes be just scrapped away to support a finding that Plaintiff's placement of crowns was unjustified and that Plaintiff failed to chart decalcification and caries. Particularly, the Defendants panelists manipulated Dr. Kohn testimony to support of their finding of the unscientific falsehood.

82- Recklessly used their specialized professional knowledge in clear absence of all jurisdiction, by including the unscientific and false statement that surgeons may leave a young child in the operating room under general anesthesia to have a lengthy conversation with their parent that may last between ten to fifteen minutes, despite their actual knowledge of the falsity of this statement. The Defendants panelists particularly engaged in this misconduct to support their finding that Plaintiff failed to obtain proper informed consent from the patient's mother.

83- Recklessly abused their specialized professional knowledge in clear absence of all jurisdiction, to deprive Plaintiff of liberty. The Defendants panelists know that when an attempt to induce general anesthesia fails, a clinical dental exam is not performed. Despite their actual knowledge, the Defendants panelists recklessly found that a dental exam was done during the failed attempt to induce general anesthesia to justify their finding that Plaintiff failed to chart decalcifications.

84- Recklessly abused their specialized professional knowledge in clear absence of all jurisdiction, to find that Plaintiff practiced below the standard of care by failing to chart caries and decalcifications, despite their professional knowledge that a dental surgeon who treats children under general anesthesia never charts caries nor charts decalcifications, but rather documents those findings in the operative notes.

16

85- Recklessly manipulated Dr. Guzzardi's testimony. Although Dr. Guzzardi's testimony corroborated Plaintiff's testimony that mother consented to the use of the crowns, the Defendants' panelists found that Dr. Guzzardi's proved the opposite.

86- After the Court compelled the Defendant Commission to revise its findings and conclusions of law regarding Plaintiff's use of the crowns, the Defendants panelists recklessly persisted on maintaining that Plaintiff use of the crowns was below the standard of care.

87- Recklessly found and publicized Plaintiff as an unethical practitioner who provides unnecessary dental treatment for children, until Superior Court compelled Defendants to reverse this finding on September 28, 2020.

88- After the Court compelled the Defendant Commission to revise its MOD for the second time and even after the Defendant Commission was compelled to acknowledge that Plaintiff's use of the crown was within the standard of care, the Defendants panelists recklessly persisted on maintaining the same penalties that were meant to discipline professional negligence and/or professional incompetence.

89- Recklessly suspended Plaintiff's license because the Defendants irrationally found that Plaintiff poses clear and immediate risk to the public.

90- Recklessly subjected Plaintiff's license to a second reprimand and to an extension of probation to monitor Plaintiff for "skill and safety" until April 2, 2022, despite the lack of finding of unskillfulness and/or unsafe practices.

91- In furtherance of their continuous misconduct, Defendants recklessly coerced Plaintiff and enforced the unjustified extended probation to monitor Plaintiff for skill and safety until April 2, 2022.

92- As of the date of this Complaint, Defendants recklessly continues to assert that Plaintiff presented clear and immediate danger to the public.

93- Because there was never an evidence, nor a finding of clear and immediate danger to the public, Defendants' reckless conduct was willful and wanton and in clear absence of all jurisdiction.

17

94-Because there was never an evidence nor a finding of unskillfulness, Defendants' reckless conduct in forcing and coercing Plaintiff to be monitored for skill and safety until April 2, 2022 was willful and wanton and in clear absence of all jurisdiction.

95-The Defendants' highly unreasonable and reckless disregard was a substantial factor in causing the Plaintiff the following injuries, some of which may be permanent:

a. depression

b. anxiety; and

c. interference with profession.

96-As a further result of the foregoing, the Plaintiff has incurred and will continue to incur without limitation, many expenses to his financial detriment.

97-As a further result of said misconduct, the quality of Plaintiff's life has been greatly diminished.

## COUNT IV: Intentional Discrimination

**1-97.** The allegations of each of the foregoing paragraphs are incorporated into this Count as if specifically re-alleged herein. Plaintiff repeats and realleges the allegations contained in paragraphs 1–97 as if fully set forth herein.

98- Plaintiff submitted to Defendants his Curriculum Vitae ("C.V") showing that Plaintiff is an immigrant from a predominantly Muslim middle eastern country. Said C.V became a full exhibit in the proceedings.

99-At least one of the three Defendants panelists has expressed to a third party, negative views and/or sentiments against immigrants from predominantly Muslim middle eastern countries or followers of the Muslim religion. At least one of the three Defendants panelists acted out of animus against Plaintiff solely due to Plaintiff's protected class status.

100-  Acting out of animus against Plaintiff, the Defendants panelists willfully and wantonly treated Plaintiff drastically different than other similarly situated

18

Respondents are treated when presented before the panel in an administrative hearing. Plaintiff's disparate treatment was wholly irrational and arbitrary.

101- Acting out of animus against Plaintiff and in clear absence of all jurisdiction, the Defendants panelists willfully and wantonly treated Plaintiff drastically different than other similarly situated Respondents through the inclusion of false scientific data as 'findings of fact' in their proposed Memorandum of Decision ("MOD") to justify issuing disciplinary action against Plaintiff despite their actual knowledge of the falsity of that data.

102- Acting out of animus against Plaintiff, the Defendants panelists treated Plaintiff drastically different than other similarly situated respondents through abusing their specialized professional knowledge, through acts of omission, misrepresentation of testimonies of several witnesses. Plaintiff's disparate treatment was wholly irrational and arbitrary.

103- Never in the history of the Dental Commission a respondent was ever ordered on probation to be monitored for skill and safety in the absence of a finding of unskillfulness and/or unsafe practices.

104- Defendants persisted on coercing Plaintiff to enforce the unjustified probation until April 2, 2022, despite their awareness that the probation is not warranted.

105- As of March 2, 2023, the Defendant Commission re-asserted its position that it will continue to rigorously oppose plaintiff's attempts to reverse the reprimands and will continue to maintain the unjustified disciplinary actions on Plaintiff's license in the national databank to protect the public from Plaintiff.

106- Plaintiff was discriminated against under a program/activity that benefits from federal funds, which is facilitating delivery and accessibility of healthcare to the citizens of Connecticut.

## COUNT V: Retaliation on the Underlying Count of Discrimination

**1-106.** The allegations of each of the foregoing paragraphs are incorporated into this Count as if specifically re-alleged herein. Plaintiff repeats and realleges the allegations contained in paragraphs 1–106 as if fully set forth herein.

107- Using 'delayed noncompliance' as a pretext to retaliate against Plaintiff for filing an appeal to exercise his constitutional right to fundamental fairness, The Defendant Department retaliatorily charged Plaintiff with posing clear and immediate danger to the public unless Plaintiff's license is not suspended immediately. Plaintiff's disparate treatment was wholly irrational and arbitrary. Defendants had actual knowledge that Plaintiff's delayed compliance does not make Plaintiff a clear and immediate danger to the public.

108- Although the Defendants had actual knowledge that Plaintiff does not pose clear and immediate danger to the public, the Defendants retaliated against Plaintiff by suspending Plaintiff's license because the Defendants irrationally and arbitrarily found that Plaintiff poses clear and immediate danger to the public.

109- Using 'delayed noncompliance' as a pretext to punish Plaintiff for filing an appeal to exercise his constitutional right to fundamental fairness, the Defendant Department charged Plaintiff to discipline his license once again.

110- Although the Defendants had actual knowledge that delayed compliance is not a ground for taking additional disciplinary actions, the Defendants once gain disciplined Plaintiff's license by issuing a second 'reprimand' against Plaintiff's license and extending Plaintiff's probation for six months to monitor Plaintiff for practicing with "skill and safety."

111- Until April 2, 2022, and under the threat of further retaliatory actions, the Defendants forced and coerced Plaintiff to hire a dentist to monitor Plaintiff for "skill and safety" despite the lack of finding of unskillfulness and/or unsafe practices.

112- Between September 5, 2018 and March 4, 2023, the Defendants vigorously opposed Plaintiff's efforts to appeal the Defendant Commission's decision, findings of facts, and orders to reprimand Plaintiff's license twice, to place Plaintiff on probation, to extend Plaintiff's probation, to maintain a license suspension on Plaintiff's record and to maintain a $10,000 fine.

20

## COUNT VI: Conspiracy to Interfere with Civil Rights - 42 U.S. Code § 1985.

**1-112.** The allegations of each of the foregoing paragraphs are incorporated into this Count as if specifically re-alleged herein. Plaintiff repeats and realleges the allegations contained in paragraphs 1–112 as if fully set forth herein.

113- In clear absence of all jurisdiction, the Defendants panelists conspired amongst themselves, with Tilles and with Morales.

114- The Defendants in the preceding paragraph conspired for the purpose of depriving, Plaintiff of the equal protection of the law and of equal privileges and immunities under the law.

115- Under the guise of giving legal advice to the Defendants panelists, Morales conspired with panelists to ensure that the Defendant panelists misrepresentations of scientific facts and manipulations of testimonies are legally worded in the MOD in a manner that renders their decision unappealable in Superior Court.

116- Specifically, Morales conspired with the Defendant panelists to use credibility as a ground for disciplinary proceeding because Superior Court does not pass on credibility, despite the fact that a credibility assessment is neither warranted nor required.

117- Although the delayed compliance was clear on the face of the administrative appeal case and is not subject to credibility assessment, Tilles and Morales conspired with the Defendant panelists to include the absurd finding that Plaintiff was "not credible" on his reasoning for the delayed compliance.

118- Co-conspirators Tilles and Morales are both attorneys for the Department of Public Health. It is unlawful for the prosecutor and the panelists to be on the same side of the case. Yet, all engaged in unlawful *ex parte* communication.

119- Tilles and Morales along with the Defendants panelists entered into an agreement to achieve the unlawful end of depriving Plaintiff of his constitutional

21

rights to fundamental fairness, to practice his profession, to earn a living and pursue a livelihood without undue interference from the state.

120- The conspiracy is motivated by class-based and/or invidious discriminatory animus behind the conspirators' actions as alleged in the Intentional Discrimination and the Retaliation counts.

121- In a clear meeting of the minds pattern, Tilles and Morales conspired with the Defendants panelists to ensure adjudication of the charges against Plaintiff, specifically the reversed charge of placing one or more crowns without adequate justification, or without adequately documented justification.

122- In furtherance of the conspiracy and in a clear meeting of the minds pattern, the unjustified charge of clear and immediate danger to the public was adjudicated by the Defendants panelists. As of March 4, 2023, the Defendants continue to maintain and to insist that Plaintiff's suspension should remain on Plaintiff's record and in the national databank.

123- In furtherance of the conspiracy and in a clear meeting of the minds pattern, the unjustified extension of probation was adjudicated by the conspirators Defendants and was maliciously enforced by the Defendants until April 2, 2022.

124- As of March 4, 2023, the Defendants continue to maintain and to insist that Plaintiff's extended probation should remain on Plaintiff's record and in the national databank.

125- In furtherance of the conspiracy and in a clear meeting of the minds pattern, the unjustified second reprimand was adjudicated by the Defendants panelists.

126- As of March 4, 2023, the Defendants continue to maintain and to insist that Plaintiff's second reprimand should remain on Plaintiff's record and in the national databank.

## COUNT VII: Abuse of Process

**1-126.** The allegations of each of the foregoing paragraphs are incorporated into this Count as if specifically re-alleged herein. Plaintiff repeats and realleges the allegations contained in paragraphs 1–126 as if fully set forth herein.

127- The Defendants are responsible for instituting civil proceedings against Plaintiff. Defendants charged and adjudicated civil charges against Plaintiff, which were partially reversed.

128- The Defendants' abuse was neither warranted nor authorized by the process. The only way the process could have possibly authorized the Defendants' abuse would have been an evidence of unskillfulness and an evidence of clear and immediate danger to the public; neither was present, not even a finding in support of the abuse.

129- The Defendant misused the legal process of disciplinary proceedings to accomplish the unlawful ulterior purpose of discrimination, unlawfully obtaining a $10,000 fine and misleading the public regarding Plaintiff's quality of care.

130- Through abusing their specialized professional knowledge in clear absence of all jurisdiction, the Defendants aggrieved the Plaintiff substantially. Plaintiff had to incur substantial time and expenses and invest in a lengthy and costly appeal process as a direct result of Defendants misconduct.

131- Notwithstanding, the Defendants used such legal process primarily to accomplish a purpose for which it is not designed.

132- Specifically, the Defendants abused the legal process through charging Plaintiff with falling below the standard of care with unnecessarily placing one or more crowns without justification.

133- Specifically, the Defendants abused the legal process through charging Plaintiff with being a clear and immediate risk to the public to unjustly suspend his license. Defendants further abused the legal process and suspended Plaintiff's license accordingly.

134- The Defendant abused the legal process through charging Plaintiff with unskillfulness to obtain an extension of probation against Plaintiff to monitor Plaintiff for practicing with skill and safety. Defendants further

abused the legal process and extended Plaintiff's probation accordingly and to enforce the probation until April 2, 2022.

135- The Defendant abused the legal process through charging Plaintiff to unjustly obtain a second reprimand against Plaintiff. Defendants further abused the legal process and issued a second unjustified reprimand against Plaintiff accordingly.

136- Connecticut General Statutes § 20-114(a) provides in relevant part, that grounds for disciplinary action require "proof that a practitioner has become unfit or incompetent or has been guilty of cruelty, incompetence, negligence or indecent conduct toward patients." The word 'incompetence" has been substituted for unskillfulness from C.G.A § 20-114.

137- The Defendant's unconstitutional use of the statute constitutes abuse of process because the Defendant's primary purpose was to retaliate against Plaintiff, to further discriminate against Plaintiff and to obtain the unjustified $10,000 fine to which Defendants not legally entitled to.

138- In furtherance of its abuse of the process, the Defendant Commission on March 4, 2023, officially submitted to Superior Court that the Commission will continue to rigorously oppose Plaintiff's efforts to appeal the Commission's order to reprimand Plaintiff again and to suspend his license because the Commission is committed to "protecting the public" from Plaintiff. The purpose of said submission was improper.

139- Defendant's conduct in the form of repeated and continuous misconduct constitutes abuse of process because the Defendants' primary purpose was to retaliate, to discriminate and obtain an amount of money to which Defendants were not legally entitled to.

140- Defendants conduct is reckless, willful and wanton and in clear absence of all jurisdiction.

141- As a direct and proximate result of the Defendants' actions and conduct, Plaintiff has suffered deprivation of liberty. Plaintiff was deprived of his

constitutional right to earn a living and pursue a livelihood without undue interference from the state.

142-   Plaintiff suffered the natural consequences resulting from the abuse, including injury to feelings because of the humiliation, disgrace, and indignity.

143-   The Plaintiff also suffered special damages incurred in consequence of the wrong, including but not limited to legal expense, extensive time and effort related to self-representation, significant distraction from business, from duty towards business and the ability to earn revenue from business.

## COUNT VIII: Tortious Interference with Business Expectancies

**1-143.** The allegations of each of the foregoing paragraphs are incorporated into this Count as if specifically re-alleged herein. Plaintiff repeats and realleges the allegations contained in paragraphs 1–143 as if fully set forth herein.

144-   Contractual business relationships existed between the Plaintiff and dental insurance companies.

145-   The Defendant intentionally interfered with the business relationships by issuing unjustified disciplinary actions, enforced and extended probation until April 2, 2022, and license suspension that are bound to result in the unilateral termination of the business contracts between the dental insurance companies and Plaintiff.

146-   By virtue of their professional knowledge, and as healthcare practitioners, the Defendants knew of the contractual business relationship between Plaintiff and the dental insurance companies. Defendants had knowledge of that expectation of economic advantage from said contractual business relationship.

147-   The majority of the dental insurance companies terminated their contacts with Plaintiff immediately after the issuance of the multiple disciplinary actions, suspension and extended probation. Said termination will remain in effect for a period of five years after the issuance of the most recent disciplinary action before Plaintiff can reapply to restore the same contracts.

148- The Defendants wrongfully and without justification interfered with the Plaintiff's reasonable expectation of economic advantage from his business contracts.

149- In the absence of the wrongful act of the Defendants, the Plaintiff would have realized his economic advantage or benefit.

150- The Plaintiff sustained significant damages as a result of the Defendants' tortious interference.

151- Defendants conduct is reckless, willful and wanton and in clear absence of all jurisdiction.

## COUNT IX: Fraudulent Concealment

**1-151**. The allegations of each of the foregoing paragraphs are incorporated into this Count as if specifically re-alleged herein. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1–151 as if fully set forth herein.

152- Defendant intentionally concealed the facts stated in the preceding paragraph, from the Plaintiff specifically the Defendant's panelists animus against Plaintiff's protected class and the unlawful *ex parte* communication between the Defendant panelists and the Defendant Department's counsels.

153- Defendants concealed the facts for the purpose of delaying the Plaintiff's filing of a Complaint on his cause of action.

154- Defendant had actual awareness, rather than imputed knowledge, of the facts necessary to establish the Plaintiff's cause of action.

155- Defendant intentionally concealed the facts stated in paragraph 152, from the Plaintiff.

156- Defendant concealed the facts for the purpose of delaying the Plaintiff's filing of a Complaint on his cause of action.

## COUNT X: Negligent Infliction of Emotional Distress

**1-156.** The allegations of each of the foregoing paragraphs are incorporated into this Count as if specifically re-alleged herein. Plaintiff repeats and realleges the allegations contained in paragraphs 1–156 as if fully set forth herein.

157- The Plaintiff suffered severe emotional distress due to Defendants unlawful conduct.

158- The Defendants' conduct created an unreasonable risk of causing the Plaintiff emotional distress.

159- The Plaintiff's distress was foreseeable.

160- The emotional distress was severe enough that it might result in mental illness or bodily harm.

161- The Defendants' conduct was the direct cause of the Plaintiff's distress.

### COUNT XI: Intentional Infliction of Emotional Distress

**1-161.** The allegations of each of the foregoing paragraphs are incorporated into this Count as if specifically re-alleged herein. Plaintiff repeats and realleges the allegations contained in paragraphs 1–161 as if fully set forth herein.

162- Defendants maliciously charged Plaintiff with providing unnecessary treatment to children.

163- Defendants maliciously charged Plaintiff with posing clear and immediate danger to the public. Defendants unlawfully adjudicated and publicized Plaintiff as a posing clear and immediate danger to the public.

164- As of the date of this Complaint, Defendants continues to assert that Plaintiff presented clear and immediate danger to the public.

165- Because there was never an evidence nor a finding of clear and immediate danger to the public, Defendants' conduct was willful and wanton and in clear absence of all jurisdiction.

166- Because there was never a finding of unskillfulness, Defendants' conduct in forcing Plaintiff to be monitored for skill and safety until April 2, 2022, was willful and wanton and in clear absence of all jurisdiction.

167- Defendants misconduct since September 5, 2018, until the date of the filing of this Complaint was intended to inflict emotional distress on Plaintiff.

168- Plaintiff suffered the humiliation, disgrace and indignity of being accused and publicized as an unethical practitioner who provides unnecessary treatment for children and as posing clear and immediate danger to the public.

27

169- Defendants knew or should have known that emotional distress was a likely result of her conduct.

170- Defendants misconduct was intended to inflict emotional distress on Plaintiff.

171- Defendants conduct was extreme and outrageous.

172- The Defendants' conduct is outrageous and extreme in degree, going beyond all possible bounds of decency to the extent that it is regarded as atrocious and utterly intolerable in a civilized community.

173- Defendants conduct was the cause of the Plaintiff's distress.

174- The emotional distress sustained by the Plaintiff was severe.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays this Court issue equitable relief as follows:

1- Issue declaratory relief to secure Plaintiff's constitutional rights as follows:

A- Secure Plaintiff's right to file his petition for a new administrative hearing pursuant to Conn. Gen Stat. § 4-181a(b) for the purpose of the reversal of the Defendant Commission's decisions, which would authorize the Defendant Commission to reverse its unconstitutional decisions under Conn. Gen Stat. § 4-166(3).

B- Plaintiff's constitutional rights have been violated in enforcing a probation to monitor him for skill and safety, in suspending Plaintiff's license, in issuing two reprimands against plaintiff's license and imposing the $10,000 penalty.

2- Issue injunctive relief to refrain from taking further retaliatory actions against Plaintiff in further violation of Plaintiff's constitutional rights.

3- Money damages:

    a- Compensatory damages in excess of twenty Million Dollars;

    b- Punitive damages;

    c- Consequential and pecuniary damages;

    d- Costs;

    e- Attorney's fees, and;

    f- Such other monetary awards as this Court may deem just and proper.

4- Issue other relief as this Court deems appropriate and just.

Respectfully submitted,

PLAINTIFF.

 /s/  Ammar Idlibi/
AMMAR IDLIBI
33 Maggie Court
Terryville, CT 06786
Tel (860)543-54500
Fax: 860-516-8918
E-mail: aidlibi@yahoo.com

## STATEMENT OF VERIFICATION

I have read the above Complaint and it is correct to the best of my knowledge.

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

PLAINTIFF,

AMMAR IDLIBI

## Certificate of Service

A copy of the foregoing Complaint along with the summons, and the remaining documents filed in this case will be served upon Defendants in their official and in their individual capacities within the timeframe prescribed by the federal rules for proper and timely service.

PLAINTIFF,

AMMAR IDLIBI

29