UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMMAR IDLIBI,<br>    *Plaintiff*,<br><br>    v.<br><br>CONNECTICUT DEPARTMENT OF<br>PUBLIC HEALTH *et al.*,<br>    *Defendants*. | No. 3:23-cv-353 (JAM) |

**ORDER GRANTING MOTION TO DISMISS**

Ammar Idlibi is a dentist. He has filed a *pro se* complaint against the Connecticut Department of Public Health (the "Department"), the Connecticut State Dental Commission (the "Commission"), and five individual defendants: Steven Reiss, Deborah Dodenhof, Anatoliy Ravin, David Tilles, and Olinda Morales. He claims they violated his rights stemming from professional discipline proceedings. Because Idlibi does not allege plausible grounds for relief, I will grant the defendants' motion to dismiss.

BACKGROUND

I take the facts as stated in Idlibi's amended complaint and corresponding exhibits as true for the purposes of this ruling. Idlibi is a Connecticut licensed board-certified pediatric dentist.[1] In April 2016, he saw a three-year-old patient for treatment related to cavities.[2] Idlibi placed stainless steel crowns on eight of the patient's teeth.[3] The patient's mother filed a complaint against Idlibi with the Department.[4]

The Department filed a statement of charges with the Commission, alleging that Idlibi's license was subject to disciplinary action pursuant to Connecticut General Statute § 20-114(a) for

---

[1] Doc. #26 at 3 (¶ 1).
[2] Doc. #26-2 at 3–4 (¶¶ 2, 6).
[3] *Id.* at 3 (¶ 2).
[4] Doc. #26 at 4 (¶ 14).

failing to meet the standard of care in six ways.[5] The Commission appointed Reiss, Dodenhoff, and Ravin as a panel to convene a hearing in January 2018.[6] Tilles and Morales, both Department attorneys, participated in the disciplinary proceeding; Tilles prosecuted the charges, and Morales provided the panel with legal counsel.[7] During the course of the hearing, the Department and Idlibi provided argument, presented evidence, and conducted cross-examination.[8]

The Commission panel drafted a proposed final decision, which the Commission reviewed prior to issuing a memorandum of decision in September 2018, finding that the Department had proven five of the charges.[9] The Commission issued a reprimand, placed Idlibi's license on probation for three years, and ordered him to pay a civil penalty of $10,000, to complete coursework, and to engage a practice supervisor.[10]

Idlibi appealed the decision to the Connecticut Superior Court.[11] After a remand for clarification, the Commission revised its earlier finding to conclude that the Department had proven three of the charges, and then the state court dismissed the appeal.[12]

In February 2019, while the appeal was pending in state court, the Department filed a statement of charges and moved for summary suspension of Idlibi's license for failure to comply

---

[5] Doc. #26-2 at 1, 3 (¶ 2).
[6] Doc. #26 at 6 (¶ 23); Doc. #31-2 at 4.
[7] Doc. #26 at 14 (¶ 70), 22 (¶¶ 123, 126).
[8] Doc. #26-2 at 2.
[9] Doc. #26 at 6 (¶ 28); Doc. #143.00 at 15–21, *Idlibi v. Conn. State Dental Comm'n* (*Idlibi I*), HHB-CV18-5023867-S (Conn. Super. Ct. 2019).
[10] Doc. #143.00 at 21–23, *Idlibi I*, HHB-CV18-5023867-S.
[11] Doc. #26 at 7 (¶ 32).
[12] Doc. #26-2 at 2–3, 10–13; Doc. #31-2 at 5–6. *See Idlibi I*, 2020 WL 589574 (Conn. Super. Ct. 2020) (remanding for clarification).

with the Commission's September 2018 order.[13] The Commission granted the suspension but ultimately lifted it in April 2019 in response to Idlibi's motion.[14]

After holding a hearing, the Commission issued another memorandum of decision in September 2019, finding that Idlibi had failed to comply with its September 2018 order.[15] As a result, the Commission issued a reprimand and ordered the probation period to begin to run from April 2019.[16] Idlibi again appealed to the Connecticut Superior Court, which dismissed the petition.[17]

Following the Commission's issuance of a final decision, the Connecticut Superior Court issued another decision in 2020 dismissing Idlibi's appeal. This decision in turn was affirmed by the Connecticut Appellate Court, and the Connecticut Supreme Court denied certification. *See Idlibi v. Conn. State Dental Comm'n*, 2020 WL 6712454 (Conn. Super. Ct. 2020), *aff'd*, 212 Conn. App. 501, *cert. denied*, 345 Conn. 904 (2022).

In particular, the Connecticut Appellate Court affirmed the determination that Idlibi had failed to obtain the mother's consent before installing eight crowns on the teeth of a three-year-old child, and it affirmed the discipline imposed. *See Idlibi*, 212 Conn. App. at 524–28. It likewise affirmed the Commission's determination that Idlibi had failed to chart caries and decalcifications in violation of the standard of care. *Id.* at 528–30.

Idlibi argued to the Connecticut Appellate Court that the proceedings before the Commission had not been fundamentally fair. But the Appellate Court declined to review the claim, because Idlibi failed to preserve any constitutional challenge. *Id.* at 531. The Appellate

---

[13] Doc. #26 at 7 (¶ 34); Doc. #109.00 at 4, *Idlibi v. Conn. State Dental Comm'n* (*Idlibi II*), HHB-CV19-5026330-S (Conn. Super. Ct. 2019).
[14] Doc. #109.00 at 4–5, *Idlibi II,* HHB-CV19-5026330-S.
[15] *Id.* at 5, 11. The panel assembled for this hearing was composed of Reiss, Dodenhoff, and Jeanne Strathearn, who is not named in this suit. *Id.* at 4.
[16] *Id.* at 11.
[17] Doc. #26 at 8 (¶ 36); Doc. #145.00 at 4, *Idlibi II,* HHB-CV19-5026330-S.

3

Court noted as well that Idlibi had argued "in conclusory fashion that his constitutional right to fundamental fairness was violated" but that "his claim, essentially, is another challenge to the sufficiency of the evidence to support the finding that he deviated from the standard of care" and that he "failed to explain what part of the proceedings allegedly constituted a violation of any constitutional right," so that "the claim is inadequately briefed and we decline to review it." *Ibid.*

On March 21, 2023, Idlibi filed this federal lawsuit against the Department, the Commission, and the five individual defendants in their official and individual capacities.[18] His amended complaint includes numerous federal and state law claims. He primarily alleges pursuant to 42 U.S.C. § 1983 that the defendants violated his constitutional rights to due process and equal protection.[19] He further alleges that the defendants engaged in a conspiracy to violate his right to equal protection under 42 U.S.C. § 1985(3). In addition, he alleges federal statutory violations of the Age Discrimination in Employment Act ("ADEA"), as well as violations of Titles V, VI, and VII of the Civil Rights Act of 1964. Lastly he alleges several state law claims for malicious prosecution, negligence, recklessness, conspiracy, abuse of process, tortious interference with business expectancies, fraudulent concealment, and negligent and intentional infliction of emotional distress.[20] The defendants have moved to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[21]

---

[18] Doc. #1.
[19] The amended complaint also cites in passing 42 U.S.C. § 1981, a federal civil rights statute that prohibits racial discrimination in the making and enforcement of private contracts. Doc. #26 at 1. But it fails to allege any contract that the defendants prevented Idlibi from making or enforcing. In any event, the Second Circuit has ruled that § 1981 does not create its own cause of action and that any violation of § 1981 is enforceable only by means of a cause of action pursuant to § 1983. *See Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018).
[20] Doc. #26 at 1, 10–29.
[21] Doc. #31.

## DISCUSSION

The standard that governs a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is well established. A complaint may not survive unless it alleges facts that taken as true give rise to plausible grounds to sustain the Court's jurisdiction and a plaintiff's claims for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019); *Kim v. Kimm*, 884 F.3d 98, 102–03 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155 (D. Conn. 2016).[22]

This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The Court may also consider any documents attached as exhibits to, incorporated by reference in, or integral to the complaint. *See Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018).

If the plaintiff is a *pro se* litigant, the allegations of the complaint must be read liberally to raise the strongest arguments they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*). Still, even a *pro se* complaint may not survive dismissal if its factual allegations do not establish at least plausible grounds for a grant of relief. *Ibid.*

### *Eleventh Amendment immunity*

The defendants argue that Idlibi's claims are barred in part by the Eleventh Amendment. The Eleventh Amendment and related principles of state sovereign immunity generally divest the federal courts of authority over lawsuits by private citizens against the States, state government entities, and state government officials in their official capacities. *See generally Lewis v. Clarke*, 581 U.S. 155, 160–62 (2017); *T.W. v. N.Y. State Bd. of L. Examiners*, 996 F.3d 87, 92 (2d Cir. 2021). "The Eleventh Amendment, however, is not without exception." *Leftridge v. Jud. Branch*,

---

[22] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

2023 WL 4304792, at *6 (D. Conn. 2023). "Congress may abrogate a state's immunity by statute, a state may waive its immunity, or a state official may be sued in his or her official capacity under the *Ex Parte Young* doctrine." *We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 579 F. Supp. 3d 290, 300 (D. Conn. 2022) (citing *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007)), *aff'd in part, vacated in part*, 76 F.4th 130 (2d Cir. 2023); *see also Ex parte Young*, 209 U.S. 123 (1908).

Congress has not abrogated Eleventh Amendment immunity for claims arising under sections 1981, 1983, or 1985. *See Quern v. Jordan*, 440 U.S. 332, 340–45 (1979) (§ 1983); *Bamba v. Fenton*, 758 F. App'x 8, 12 (2d Cir. 2018) (§ 1981); *Chris H. v. New York*, 740 F. App'x 740, 741 (2d Cir. 2018) (§ 1985). Nor has Congress validly abrogated state sovereign immunity under the ADEA. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 66–67 (2000). On the other hand, Congress has abrogated the State's immunity with respect to claims arising under Title VI and Title VII of the Civil Rights Act of 1964. *See Fin. Oversight & Mgmt. Bd. for P.R. v. Centro de Periodismo Investigative, Inc.*, 598 U.S. 339, 350 (2023) (Title VII); *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (Title VI). Therefore, the Eleventh Amendment does not bar Idlibi's Title VI and Title VII claims.[23]

As for Idlibi's claims against the five individual defendants, the *Ex parte Young* exception—which permits claims for prospective injunctive and declaratory relief to proceed against state officials in their official capacity—does not apply here. To decide if the *Ex parte Young* exception applies, courts "conduct a 'straightforward inquiry' into whether the complaint (1) 'alleges an ongoing violation of federal law' and (2) 'seeks relief properly characterized as

---

[23] As to Idlibi's claim under Title V of the Civil Rights Act, it is patently meritless for reasons discussed below, and so there is no need to consider whether it is also barred by the Eleventh Amendment.

prospective.'" *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Although Idlibi satisfies the second requirement by seeking prospective relief (such as an injunction to prevent future retaliation and an injunction to allow him to move in state court for a new administrative hearing pursuant to Conn. Gen. Stat. § 4-181a(b)), he does not satisfy the first requirement because he does not allege facts to show an ongoing violation of federal law. The disciplinary proceedings have concluded and been validated on state court review. Moreover, to the extent that Idlibi wants to seek further recourse before the Commission, Idlibi made clear at oral argument that he has already availed himself of § 4-181a(b) by filing a request that the Commission conduct another evidentiary hearing.

The amended complaint also seeks a declaration that Idlibi's "constitutional rights have been violated in enforcing a probation to monitor him for skill and safety."[24] But he abandoned this request at oral argument, noting that his probation period was complete.

Idlibi also requested at oral argument that the Court issue an order requiring the removal of the two reprimands from his record. But the continuing presence of a reprimand in a plaintiff's file is not an ongoing harm sufficient to invoke *Ex parte Young*. *See Drown v. Utah State Office of Educ.*, 767 F. App'x 679, 685 (10th Cir. 2019). While "disciplinary actions may have continuing consequences," a plaintiff's "invoking those effects does not transform past state action into an ongoing violation." *Jemsek v. Rhyne*, 662 F. App'x 206, 211 (4th Cir. 2016).

In short, the Eleventh Amendment applies to bar Idlibi's claims under section 1981, 1983 and 1985(3), as well as under the ADEA. Accordingly, I will dismiss these claims in their

---

[24] Doc. #26 at 29.

entirety against the two agency defendants and as to Idlibi's official-capacity claims against the five individual defendants.

### *Absolute immunity*

The five individual defendants further argue that they are entitled to absolute immunity from Idlibi's claims against them for money damages in their individual capacities. By way of background, "[a] long line of [Supreme Court] precedents acknowledges that, generally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 13 (1991) (*per curiam*). Similarly, a court attorney or judicial law clerk who furnishes legal advice to the judge with respect to judicial decisionmaking is entitled to absolute judicial immunity for such services. *See Fishman v. Off. of Ct. Admin. N.Y. State Cts.*, 2021 WL 4434698, at *1 (2d Cir. 2021). Likewise, "[p]rosecutors are entitled to absolute immunity with respect to their prosecutorial functions, which include their actions as advocates and when their conduct involves the exercise of discretion." *Bouchard v. Olmsted*, 775 F. App'x 701, 703 (2d Cir. 2019).

As relevant here, these doctrines of absolute judicial and prosecutorial immunity extend beyond traditional court proceedings to adjudicative proceedings before administrative agencies. *See Butz v. Economou*, 438 U.S. 478, 512–13, 515 (1978) (holding that "adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages" and that "agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts"); *Salu v. Miranda*, 830 F. App'x 341, 347–48 (2d Cir. 2020) (judicial immunity for state administrative law judges).

It is readily apparent that the five individual defendants are entitled to absolute immunity from Idlibi's claim for money damages. The Commission's three panelists—Reiss, Dodenhoff,

and Ravin—conducted hearings and issued proposed decisions.[25] Their roles were therefore "functionally comparable to that of a judge" such that absolute immunity is proper. *See Giammatteo v. Newton*, 2011 WL 13196431, at *5 (D. Conn. 2011) (absolute immunity for members of the Connecticut State Board of Examiners for Physical Therapists because the proceedings resembled the judicial process).

One of the Department's attorneys—Tilles—prosecuted the charges against Idlibi.[26] "[A]n agency official who decides to institute an administrative proceeding is entitled in such circumstances to absolute immunity," and the Second Circuit "has previously extended absolute immunity to state and federal officials initiating noncriminal proceedings such as administrative proceedings and civil litigation." *Cornejo v. Bell*, 592 F.3d 121, 127–28 (2d Cir. 2010).

Another Department attorney—Morales—provided the panelists with legal counsel.[27] She is entitled to absolute immunity for her role as a "legal advisor[] of those persons directly involved in the disciplinary proceedings." *Mandelbaum v. N.Y. Mercantile Exch.*, 894 F. Supp. 676, 681 (S.D.N.Y. 1995); *see Plude v. Adams*, 2013 WL 943730, at *2 (D. Conn. 2013) (noting that "when a quasi-judicial function is being performed, absolute immunity extends to not only members of commissions and boards but also to their staff members").

A defendant who is entitled to absolute immunity "loses that privilege only if she acts 'in the clear absence of all jurisdiction.'" *Finn v. Anderson*, 592 F. App'x 16, 19 (2d Cir. 2014) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978)). Although Idlibi claims that the defendants acted in clear absence of all jurisdiction, he has not alleged any non-conclusory facts to support this contention.[28] And without such a showing of the clear absence of all jurisdiction,

---

[25] *Id.* at 6 (¶ 23); Doc. #26-2 at 2.
[26] Doc. #26 at 5 (¶ 20), 14 (¶ 70), 22 (¶ 126).
[27] *Id.* at 22 (¶¶ 123, 126).
[28] *See id.* at 15–19 (¶¶ 82, 87–92, 101–02, 109), 21 (¶ 121), 24–25 (¶¶ 138, 150), 27–28 (¶¶ 161, 175–76).

9

it is simply not enough that he has alleged that the defendants acted erroneously, maliciously, dishonestly, in bad faith, or in excess of their authority.[29] *See Idlibi v. Burgdorff*, 2023 WL 3057160, at *3–4 (D. Conn. 2023).

In short, the individual defendants are entitled to absolute immunity with respect to Idlibi's federal law claims against them in their individual capacity for an award of money damages.[30] Accordingly, I will dismiss Idlibi's federal law claims against the individual defendants in their individual capacity to the extent that Idlibi seeks an award of money damages against them.

### *ADEA*

The ADEA protects against age discrimination in employment. The existence of an employer-employee relationship is an essential element of any ADA claim. *See DeBernardo v. Lowe's Home Ctrs.*, 2022 WL 377962, at *5 (E.D.N.Y. 2022). But Idlibi fails to allege that any of the defendants were his employer. Nor does the ADEA allow for liability against individual defendants. *See Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011); *Lodato v. DeJoy*, 2024 WL 216655, at *4 (D. Conn. 2024). Accordingly, even assuming that Idlibi's ADEA claim is not barred by the Eleventh Amendment, I will dismiss Idlibi's ADEA claim on the merits.

### *Title V*

Title V of the Civil Rights Act of 1964 establishes a commission on civil rights. *See* 42 U.S.C. § 1975. It does not create a private right of action. *See Idlibi v. New Britain Jud. Dist.*,

---

[29] *See, e.g., id.* at 5 (¶¶ 18–21), 13 (¶ 65), 28 (¶¶172–73).
[30] There is good reason to believe that similar immunity principles may apply to Idlibi's state law claims. *See Kahn v. Yale Univ.*, 85 F.4th 86, 90–95 (2d Cir. 2023) (discussing requirements for quasi-judicial immunity under Connecticut law). But because as discussed below I decline to exercise supplemental jurisdiction over Idlibi's state law claims, my ruling here with respect to absolute immunity applies only to Idlibi's federal law claims.

2023 WL 6216810, at *3 (D. Conn. 2023) (citing cases). Accordingly, I will dismiss Idlibi's Title V claim.

### *Title VI*

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. According to Idlibi, the Department received federal funding to facilitate access to dental care and delivery of dental care by licensed dentists to the public.[31] He alleges he was subject to discrimination on the basis of his national origin from the Middle East and his Muslim religion and denied the benefits of federal funding because the disciplinary proceeding and reprimands impeded his ability to serve patients covered by HUSKY Health, a federally funded insurance program.[32]

As an initial matter, a Title VI claim may proceed solely against the entity who receives federal funding and not against individual defendants. *DeSouza v. Kennedy*, 2017 WL 3431393, at *4 (D. Conn. 2017). Regardless, for the reasons set forth by the defendants in their briefing, Idlibi has not alleged any non-vague or non-conclusory facts to suggest that the Department took any adverse action against him because of his national origin or religion.[33] "Title VI . . . require[s] that intentional discrimination be alleged in a non-conclusory fashion." *Clyburn v. Shields*, 33 F. App'x 552, 555 (2d Cir. 2002); *see also DeSouza*, 2017 WL 3431393, at *4 (dismissing Title VI claim against state court mediator where "Plaintiff makes the conclusory allegation that Defendant, 'with oppressed racial motives, grossly discriminated against me

---

[31] Doc. #26 at 3 (¶ 3).
[32] *Id.* at 7 (¶ 34), 19 (¶¶ 106-07).
[33] Doc. #31-2 at 28–29.

because of race, skin color, ethnicity and as minority litigant' but provides no factual support for these racial discrimination claims").

Idlibi cites several comparators who he claims were treated differently from him.[34] But the comparators must be similarly situated to the plaintiff in all material respects, which means that there must be a reasonably close resemblance of the facts and circumstances of the adverse actions across the plaintiff's and comparators' cases. *See Radwan v. Manuel*, 55 F.4th 101, 132 (2d Cir. 2022). Again, for the reasons set forth by the defendants in their briefing, Idlibi fails to allege a reasonably close resemblance that is sufficient on its own to plausibly suggest that he was treated differently because of his national origin or race.[35]

In short, Idlibi has not alleged facts to plausibly show that he was subject to any adverse treatment because of his national origin or religion.[36] Accordingly, I will dismiss Idlibi's Title VI claim.

### *Title VII*

Title VII of the Civil Rights Act of 1964 protects against discrimination by an employer against an employee on the ground of the employee's race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2. A claim under Title VII requires proof that the plaintiff was an

---

[34] Doc. #26 at 12–13 (¶¶ 60–64).

[35] Doc. #31-2 at 23–24.

[36] Because Idlibi has not plausibly alleged that the entity defendants discriminated against him on the ground of his national origin or religion, I need not decide if Idlibi's claim should fail as well on the ground that he was not an intended beneficiary of any federal funding. *Compare Azteca Enterprizes, Inc. v. Dallas Area Rapid Transit*, 2002 WL 261521, at *2 (5th Cir. 2002) (Title VI not applicable because "[t]he intended beneficiaries of transit system are the commuters, rather than contractors or vendors"), *and Bissada v. Ark. Childs. Hosp.*, 2009 WL 1010869, at *12 (E.D. Ark. 2009) ("Medicare/Medicaid payments do not trigger Title VI because their intended beneficiaries are the patients, not the employment of physicians"), *aff'd on other grounds*, 639 F.3d 825 (8th Cir. 2011), *with Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 715–16 (4th Cir. 2014) (holding that "Title VI does not require that an injured party be the intended beneficiary of federal funds" and that "the determinative inquiry in this regard is whether [plaintiff] alleged that it suffered injury based on race discrimination and was either participating or seeking to participate in a federally funded activity, or was the intended beneficiary of those federal funds"), *and Alexander v. Hunt*, 2018 WL 3801240, at *7–8 (D. Vt. 2018) (rejecting intended beneficiary requirement for Title VI claim).

employee and subject to discrimination by the plaintiff's employer. *See Felder v. U.S. Tennis Assoc.*, 27 F.4th 834, 841–42 (2d Cir. 2022); *Idlibi*, 2023 WL 6216810, at *3. But Idlibi does not allege that he was an employee of the defendants. Nor—as discussed above—does he plausibly allege that he was discriminated against because of his national origin or religion. Accordingly, I will dismiss Idlibi's Title VII claim.

### *State law claims*

Having dismissed Idlibi's federal law claims, I turn to his state law claims. Idlibi premised his complaint on federal question jurisdiction but alternatively contended he "received a Release of Jurisdiction letter as to the Defendants state agencies."[37] The release in question, however, only authorizes the commencement of a civil action in Connecticut Superior Court, and it does not independently confer federal jurisdiction over Idlibi's state law claims.[38] Moreover, federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) is not proper, because Idlibi and the defendants are all citizens of Connecticut.[39] In the absence of federal diversity jurisdiction, and because there are no facially plausible federal claims against the defendants, I decline at this early stage of the litigation to exercise supplemental jurisdiction over Idlibi's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117–18 (2d Cir. 2013); *Leftridge*, 2023 WL 4304792, at *12. Moreover, in light of my dismissal of the federal claims on other grounds, I need not address the defendants' additional arguments for dismissal under the *Rooker-Feldman* doctrine and *Younger* abstention.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the defendants' motion to dismiss

---

[37] Doc. #26 at 2.
[38] Doc. #26-1.
[39] Doc. #26 at 2.

(Doc. #31). The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 4th day of March 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge